NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


ALEX PETER NICHOLS, DOC #128257,          )
                                          )
              Appellant,                  )
                                          )
v.                                        )          Case No.  2D18-1487
                                          )
STATE OF FLORIDA,                         )
                                          )
              Appellee.                   )
_____   )

Opinion filed November 8, 2019.

Appeal from the Circuit Court for Pinellas
County; Frank Quesada, Judge.

Howard L. Dimmig, II, Public Defender,
John C. Fisher and Lisa B. Lott, Assistant
Public Defenders, Bartow, for Appellant.

Ashley Moody, Attorney General,
Tallahassee, and C. Todd Chapman,
Assistant Attorney General, Tampa, for
Appellee.


SILBERMAN, Judge.

        Alex Peter Nichols challenges his sentences for (1) unlawful sexual

activity with a person sixteen or seventeen years of age (defendant twenty-four years of

age or older) and (2) delivery of a controlled substance to a person under eighteen, both

second-degree felonies.  After Nichols entered an open guilty plea, the trial court

imposed consecutive sentences of thirteen years in prison on each conviction. He does not challenge his convictions, which we affirm. Nichols contends that the trial court considered impermissible factors in sentencing him that amount to fundamental error. We agree that Nichols is entitled to relief based on one of the factors. Because the State did not meet its burden to show that the trial court did not consider an uncharged homicide in sentencing Nichols, we reverse his sentences and remand for sentencing before a different judge.

At the change of plea and sentencing hearing, the prosecutor gave a factual basis, partially based on Nichols' admissions. Nichols "picked up" the sixteen-year-old victim on the Pinellas Trail around 4:00 or 5:00 p.m., and she went to his residence with him. He offered her Dilaudid, and they both injected it. He had intercourse with the victim. That evening she overdosed and died in Nichols' apartment. He "waited some time" to call 911 and cleaned up the needles and other items first. The victim had multiple narcotics in her system, but the State was not arguing that Nichols had provided the cocaine and other drugs in her system. It could not be determined that the Dilaudid was a contributing factor to her death.

Defense counsel asserted that the victim was "smart enough" to give Nichols a false birthdate that indicated that she was nineteen. The toxicology report showed she had Valium, Xanax, cocaine, and opiates in her system and a small amount of Dilaudid. Defense counsel asserted that the victim was a chronic drug user. He also acknowledged the victim's erratic behavior that evening—that "she was obviously high on something," that she woke up two or three times and vomited, and that she passed out. By 3:00 or 4:00 a.m. Nichols found her nonresponsive. Defense counsel referred

to the victim by stating that "a lot of this she brought on herself." In responding, the trial court stated that counsel was "talking about a 16-year old child."

Nichols told the trial court he was sorry about what had happened to the victim but that she had lied about her age, although he knew that was "no excuse in the eyes of the law." He also asserted that he was "totally honest with the police from the beginning."

The prosecutor informed the trial court that Nichols had served prison time for trafficking in marijuana, possession of methamphetamine with intent to sell, and possession of a controlled substance. He also was on probation when the current crimes occurred. The prosecutor found it "extremely aggravating" that Nichols, an adult who was about forty years old, acknowledged to the police that the victim had been acting erratic, falling asleep, and then vomiting on herself but that he waited hours to get help for her. The prosecutor argued that the victim was "clearly heavily under the influence of narcotics" and that Nichols was not acting as the adult when he waited hours to call 911.

At the end of the hearing, the prosecutor stated his position that the trial court impose "a minimum of 20 years" and specifically sought fifteen years in prison on count one and a consecutive five years in prison on count two. The trial court imposed thirteen years in prison on each count, to be served consecutively, for a total of twenty-six years in prison. The sentence of thirteen years on each offense was just two years below the statutory maximum of fifteen years for these second-degree felonies. See §§ 775.082(3)(d), 794.05(1), 893.13(4)(b), Fla. Stat. (2015).

After announcing the sentences, the trial court expressed that it was appalled that Nichols would try to place blame on the child victim. The trial court then stated: "And I'm sure the State would charge the homicide case if they had the facts to do so. They don't. But we'll never know really what caused her death other than it was tragic. And you are the primary cause of her death, period."

Nichols contends on appeal that the trial court impermissibly considered an uncharged offense when the court stated its belief that Nichols was the primary cause of the victim's death. When a trial court considers constitutionally impermissible factors in sentencing a defendant, it constitutes fundamental error that requires reversal of the sentence and remand for resentencing. See Challis v. State, 157 So. 3d 393, 396-97 (Fla. 2d DCA 2015) (reversing and remanding for resentencing on drug trafficking and possession convictions when the trial court's "speculation that [the defendant's] actions resulted in numerous deaths" violated his due process rights); Shelko v. State, 268 So. 3d 1003, 1005-06 (Fla. 5th DCA 2019) (reversing and remanding for resentencing on a possession of methamphetamine conviction when the trial court's statements suggested its belief that the defendant was also engaged in the uncharged offense of sale of methamphetamine, in violation of his due process rights).

It is the State's "burden to show from the record as a whole that the trial court did not consider impermissible factors in rendering its sentence." Love v. State, 235 So. 3d 1037, 1039-40 (Fla. 2d DCA 2018) (quoting Mosley v. State, 198 So. 3d 58, 60 (Fla. 2d DCA 2015)). The appellate court "must examine the record to determine whether it 'may reasonably be read to suggest' that a defendant's sentence was the

result, at least in part, of the consideration of impermissible factors." Mosley, 198 So. 3d at 60 (quoting Moorer v. State, 926 So. 2d 475, 477 (Fla. 1st DCA 2006)).

Although it is permissible for the trial court to consider the circumstances surrounding the primary offense and the defendant's prior record, see § 921.002(1)(c), (d), Fla. Stat. (2015), consideration of subsequent misconduct or pending or dismissed charges is constitutionally impermissible and violates a defendant's due process rights. See Tharp v. State, 273 So. 3d 269, 271 (Fla. 2d DCA 2019); Lundquist v. State, 254 So. 3d 1159, 1160 (Fla. 2d DCA 2018); Fernandez v. State, 212 So. 3d 494, 496 (Fla. 2d DCA 2017); Challis, 157 So. 3d at 396; see also Hernandez v. State, 145 So. 3d 902, 905 (Fla. 2d DCA 2014) ("[U]ncharged crimes cannot be considered when determining a sentence.").

The State did not charge Nichols with committing a homicide, and the trial court expressly acknowledged that the State did not have the facts to charge a homicide. Indeed, as noted previously, the victim had multiple drugs in her system, including a small amount of Dilaudid. The State did not contend that Nichols had provided the victim with anything other than the Dilaudid, which could not be determined as contributing to her death. Nevertheless, the trial court stated that Nichols was "the primary cause of her death, period."

Reading the trial court's comments at sentencing together with the record as a whole, it is unclear whether the trial court (1) considered the circumstances surrounding the offenses for which Nichols was convicted, including the argument that he was the adult present but waited far too long to call 911; or (2) considered that Nichols was responsible for an uncharged homicide by giving the victim drugs that

contributed to her death; or (3) considered both (1) and (2) above. Taken in context, we cannot conclude that the trial court did not consider an uncharged homicide in some measure. The State has failed to meet its burden to demonstrate that the trial court did not consider an impermissible factor—an uncharged homicide—when sentencing Nichols. See Lundquist, 254 So. 3d at 1160; Fernandez, 212 So. 3d at 497. Thus, we affirm Nichols' convictions, reverse his sentences, and remand for resentencing before a different judge. See Love, 235 So. 3d at 1040.

Affirmed in part, reversed in part, and remanded.


BLACK and ATKINSON, JJ., Concur.